Good afternoon your honor. May it please the court. I'm David Wilson appearing today on behalf of Mr. Garcia in this matter. I thank you for the opportunity for appearing in this afternoon to discuss the case at hand. This case comes to the court after Mr. Garcia prevailed before the district court and sought EJF fees. And so we're seeking a review of the order denying the EJF fees requested. Our grievance with the court's order is twofold. First, it's unclear from the order itself what standard or what burden the court actually subjected the argument to. On page two of the court's order, the first paragraph specifically lists that the applicant, which would be Mr. Garcia, had to prove a negative, which is that there was no justification. That's contrary to law. In the second paragraph, attached to a parenthetical, is a reference to the government's burden. So the order on its face doesn't actually communicate to this court what standard it held the parties to when considering the question, or more importantly, what standard the court actually applied. It's easy to overlook this lapse because it does read as consistent from Commissioner of INS v. Gene, the U.S. Supreme Court case, where when Gene listed these criteria, he was literally listing criteria for eligibility. In other words, once the matter is submitted, this is the test. But in terms of allocating burden, that is not what the trial court indicated. The trial court used the word demonstrating in the application. That's an actual application on behalf of the applicant, which would be Mr. Garcia. Case law has been very clear, though. In establishing the exception to granting EJF fees, the government has to produce, by preponderance of evidence, evidence, not just conjecture, evidence that establishes that there is substantial justification for moving forward with its defense of the claim or, if it's the plaintiff, pursuing its particular action. As just a matter of law, this order that you're reviewing fails. Our second grievance, then, with this order is that the law is also unclear as to what actually was the test. The court announced at the end of its order that it found that the government had provided plausible explanations for why it was pursuing its particular position throughout the litigation. And it has to be considered against the context of the whole litigation, not just the outset, but the whole litigation. The problem with that is, that is not actually the standard in the Eighth Circuit. The Eighth Circuit requires clear, reasonable justification. In other words, solid. Plausible literally means the opposite of that. If you were to put plausible on a scale, you would have frivolous, plausible, then reasonable. The law requires even farther than reasonable. Why wasn't it reasonable, though, here? Because my understanding is that, whether you call it a misstatement, whether you call it a misrepresentation, whatever you call it, there were two potential misrepresentations here. Once when he originally applied, and then once when he sought naturalization, saying that he had never misrepresented his status before. It seems to me that, you know, that just at least provides a reasonable basis for the government to oppose the naturalization petition. Am I missing something? Well, the agency decision is premised on this 2014 conduct, which is both the application itself, where he checked no instead of yes to a question, and then the testimony given during the interview before the agency officer. So the agency's premise, it's the lie, as they describe it in their decisions, flows from that. It's not actually the statement in the post board itself. It's that they're saying that he lied about the post board, but it's not the statement in the post board application that was driving the agency and its narrative from the beginning. The other problem with that is that in the context of an EJIP motion, or consideration of an EJIP request, the question is, and looking at the whole litigation. And so a case may start out that the defense, or in this case the government, has a viable defense, or reasonable defense in this case, excuse me, or a challenge to the theory of the plaintiff. But in this case, we had a deposition by both parties at the same time. We proposed Chief Reynolds in particular, and that is in the record before the court. And Chief Reynolds was very clear as to the role in the conduct that was going on. And so what he described was essentially consistent, almost completely consistent with what Mr. Garcia had actually testified to before USCIS during his interview. But it sounds to me like the argument here, and I understand there's some evidence, which is why Mr. Garcia ultimately prevailed on his naturalization petition. But it sounds to me like we don't do this Monday morning quarterbacking necessarily, and it sounds to me like the government, you know, we shouldn't have a rule where the government is required to believe the applicant's evidence. That's a concern I have. In other words, the fact that he lied, I'm not going to say that, the fact that he made mistakes, the fact that he put the wrong thing twice, I'm just having a hard time to say it wasn't reasonable for the government to pursue that and to oppose the petition. Well, so to initially oppose it, maybe they were right to do so. But after the deposition of Mr. Reynolds, at that point, they are aware the context of which Mr. Garcia has been alleging is proven true. So they have to believe that evidence, then? They have to stop it and say? Well, they have never alleged that I could find that either Chief Reynolds or Captain Johnson had any reason to lie or misrepresent the truth or were not credible. So if you have this juxtaposition of two credible law enforcement officers, see as superiors to Mr. Garcia, testifying consistently with that we essentially know we made a mistake. This is our first time going through this. We have a job posting that literally says, all you have to do is be capable of becoming a citizen. So the government's argument is premised upon this statement. It's in Exhibit 7. They say, well, he was on notice. Essentially, I think they're arguing constructive notice because it couldn't have been actual because that phrasing is not in the posting. But the posting itself is not clear. And then they do not account for the amount of time after he started the role in which the event of signing the post form, forward form, comes into play. And Mr. Reynolds was clear. He didn't just sign the post board application. He signed all the background check applications that he signed when he became a cadet. So nothing in the process other than signing one additional form was different. But even if the captain is truthful and you take his testimony at face value and then it corroborates what Mr. Garcia is saying, does the government still able to question Mr. Garcia's intent? In other words, there's something about corroborating his description of the circumstances and why he might have been confused or made a mistake. But does that decide it? At that point, Your Honor, the burden is to produce evidence that justify why they're substantially reasonable or justified. It's not just that they can speculate or have a theory. They have to actually point to some evidence in the record that justified them sustaining the argument. So at some point when the narrative of how these events unfold has been corroborated, not just in the administrative record from his personnel file, but the testimony of two law enforcement officers prior to the process of discovery and then the deposition of Mr. Garcia himself, and there's no variance between all these various encounters. At some point, there's no evidence left for the government to point to to say we still justify our fight. Because at some point, then, it really says he's continuing to lie. We just can't put our finger on it. That's not substantial justification. All of the evidence is going to support the mistake. And what you're saying is the record is completely void of any evidence of intent? That is correct. And at that point in the litigation, the government is obligated to walk away. Because if they continue with the litigation, then they're just fighting the fight. And that's exactly what he's supposed to prevent. Your Honor, I had reserved two minutes, and I see him down to one, so I'm going to stop by my head. Thank you. Thank you. Ms. Voss, we're ready to hear from you. Yes, Your Honors, thank you. May it please the Court, Anna Voss, Assistant United States Attorney for the Appellees in this case. Your Honors, the district court found the United States' position in this case was substantially justified. And I want to address Mr. Wilson's first point by pointing to the second-to-the-last line in the district court order in which the district court states the government had a reasonable basis both in law and fact. It was substantially justified in its position in this litigation. The United States certainly proved by a preponderance of the evidence that it had a substantially justified position in the litigation. And the court should affirm the district court's decision because it properly applied the standard and found EJFEs were not appropriate. The issue, as Your Honors know, that was presented to the trial court was whether for Mr. Gallegos-Garcia, who bore the burden of proving entitlement to naturalization, could show that he had the good moral character to naturalize. This was an issue that Mr. Garcia bore the burden of proof on at trial. And because of the unique nature of naturalization and the privilege that it confers, the Supreme Court has held that doubts should be resolved in favor of the United States and against the claimant on the elements of naturalization. As the district court also correctly noted, the case was almost entirely about Mr. Garcia's credibility. I do want to address Mr. Wilson's point about the corroborating evidence from Chief Reynolds and Chief Johnson, Captain Johnson at the time. Mr. Wilson is overstating the nature of their corroborating evidence, Your Honors. Chief Johnson testified that he was not present at the meeting when Mr. Garcia signed the notarized statement averting that he was a United States citizen. Chief Reynolds testified that he didn't remember the meeting. That was at Appendix 147, and Chief Johnson's testimony is at Appendix page 66. So whether Mr. Garcia read that form, understood it, was entirely based on his credibility. And the third-party witnesses who testified did not corroborate that he didn't understand it, didn't read it, or didn't otherwise know of the requirement that you had to be a United States citizen to become a full-fledged police officer under Minnesota law. The district court was correct in applying this court's decision from United States v. Hurt to the circumstances of this case and denying the each-a-motion. Hurt said that in cases where primarily the district court is assessing credibility, each-a-fees are not appropriate. The district court, after listening to all of the evidence at the trial, acknowledged that the United States had a justified position. Now, certainly, some of the evidence in the case as to Mr. Garcia's knowledge of the requirement that he be a U.S. citizen was circumstantial, but that is perfectly proper evidence, particularly where Mr. Garcia bore the burden of proof on this issue at trial, and the United States was challenging his credibility. We did present circumstantial evidence that he should have known of the Minnesota Post Board's requirement for citizenship prior to signing his application and prior to submitting his naturalization application and sitting for an interview. That came in the form of the cadet application, which clearly stated that you had to be capable of becoming a U.S. citizen before you became an officer. Minnesota law also clearly stated that requirement. Mr. Garcia had knowledge that other states required officers to be citizens, and he acknowledged that he never looked into the requirements in Minnesota. Certainly, by the time he had submitted his naturalization application and by the time he sat for his interview, he knew that Minnesota required officers to be naturalized and to be U.S. citizens. And so the idea that there was no evidence and that the record was devoid of evidence that could be used to challenge Mr. Garcia's testimony that he didn't know that he had signed the form, didn't read it, and wasn't aware of the requirement is just not correct when you look at the record in its entirety. And certainly, that's what the district court did when making the EJID decision, and this court should affirm it. Mr. Wilson indicated that he believed the district court used an improper standard to review the motion. What is your position on that? Our position on that, Your Honor, is that that's not accurate. Based on the language that I read directly from the district court opinion, that second to the last statement, the judge was assessing that the United States had a reasonable basis, both in law and fact. And that is the language that's used, Your Honor, in the Supreme Court's decision in Pierce v. Underwood. The court in Pierce v. Underwood says substantial justification is not justified to a high degree. It's a reasonableness analysis, and that language of reasonableness is used throughout Pierce and throughout this court's jurisprudence on EJID, and that's the exact language that the district court used as well. So we don't agree with that and don't believe that the position is that the district court's order is deficient in that regard, Your Honor. Counsel, can I ask you about costs? I think in a footnote in the government's brief, the government conceded that Garcia is entitled to costs. Is that right? It seems to be there's no – you don't have to be substantially justified. There's no requirement like that for costs.  You are correct, Your Honor. The cost section of the EJID statute is – I think it's 2412A, whereas the EJID – the attorney's fees are covered in section 2412D, which incorporates the substantial justification language. So, yes, that is correct, and we don't dispute – we did not dispute the amount of costs or the fact that there's no substantial justification requirement for costs. So that's something we could decide here. Even if we agree with the government on some of the other arguments, we can decide that here. We don't need to send that back to the district court in the government's view. I don't think so, no. Yes, I think you could decide it here. It's not disputed. I want to point, Your Honors, to the very structure of the statute that was providing for the district court's review here, because I think that that is important and informs the need for this court to uphold the discretion of the district court. We had a situation in this case where Mr. Garcia – when you boil the dispute down to its simplest form, Mr. Garcia said, I didn't know about the citizenship requirement, and the government believed that he did or that he was willfully ignorant and stuck his head in the sand about that requirement. But we needed a fact finder to mediate that dispute, and 1421C provides that the district court will hold a de novo hearing and act as that fact finder. This is not an administrative review of the agency's decision making. It is de novo. The district court properly acted in that capacity as fact finder, sat through what was a short trial, short and sweet trial and listening case, and made the decision. That's precisely when the Supreme Court in Pierce talked about the appellate review of IJA decisions, emphasizing that the goal was not to re-litigate the merits of the case in an IJA appeal. The court said it's important to defer to the decision of the trial court on the question of substantial justification, that the text of the statute permits that review, and sound judicial administration counsels a deferential review of the district court's decision. Now particularly in the context where the trial court sat through the trial, assessed credibility as the main issue at trial, and determined that the government's position was substantially justified, this court should uphold that decision, and we ask that you affirm. If there are no further questions, I don't have anything more for the court. Thank you. Mr. Wilson, I think you have a bit of rebuttal. Oh, I think you need to unmute yourself. There you go. All right. I apologize, Your Honor. So I'll first start with this, that to argue that the statute, the IJA itself, requires a hearing is not correct. There are many lawsuits brought under this same statute, in which then someone else reviews the agency's conduct, and then stops the action and agrees to return the matter to the lower court, or back to the agency for completion of citizenship. Essentially a second look at whether there's a legal question, someone evaluates it, and whether litigation should be pursued, and then it doesn't ultimately have to go to the judge for a ruling. In this case, we ended up there, but the question is, do we have to get there? Beyond that, the government says that the court found substantial justification, but it did it premised on plausible explanations. Plausible explanations is not the standard. It's got to be a reasonable basis rooted in the evidence. If you look at Hurt, which the government cites, they still had to produce a point of evidence. Wilfong, that they cite from the Seventh Circuit, brings up evidence, and it has to be enough that you would survive, for example, summary judgment or a directed verdict motion. In Hurt, that very much was the case, and that's why the fees were inappropriate. We don't have that here. I see that my time is up. Thank you. Well, thank you both for your arguments here this afternoon. We'll take the matter under advisement. Thank you. Madam Deputy, does that.